NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| SHIRLEY WHITE, *Executrix of the Estate of Lee White, deceased, and in her own right*<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WILLINGBORO TOWNSHIP, *et al.*,<br><br>　　　　　Defendants. | Civil No. 18-10964 (RBK/JS)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This lawsuit for medical malpractice arises from the care and treatment rendered to decedent Lee White on July 31, 2016. The decedent was treated at Lourdes Medical Center Burlington ("Lourdes"), where he was pronounced dead by Omid Rowshan, M.D.

This matter comes before the Court on Defendants Lourdes and Dr. Rowshan's Motions for Partial Summary Judgment. The first Motion (Doc. No. 37) seeks partial dismissal of Plaintiff's claims on the basis that (1) the Affidavits of Merit ("AOMs") submitted by Plaintiff do not support vicarious liability against Lourdes and Dr. Rowshan for the negligence of unnamed agents, servants and employees of Lourdes sued under fictitious names, and (2) that no cognizable claim under 42 U.S.C. § 1983 can be asserted against Lourdes and Dr. Rowshan. The second Motion (Doc. No. 38) seeks to cap damages against Lourdes at $250,000 pursuant to the New Jersey Charitable Immunity Act, N.J.S.A. 2A:53A–8. For the reasons that follow, the Defendants' first

1

Motion is **GRANTED**, while their second Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.     BACKGROUND**

On July 31, 2016, decedent Lee White began having trouble breathing and was transported to Defendant Lourdes by emergency medical services. (Doc. No. 1 ("Pl. Compl.") at ¶18–30). The decedent was transported to the Lourdes Emergency Room between 6:17 and 6:18 a.m.; resuscitation began at 6:22 a.m., by which time the decedent was already dead. (Doc. No. 44-5 ("Pl. Brief B Ex. E") at 9; Doc. No. 44-6 ("Pl. Brief B Ex. F") at 2; Doc. No. 44-8 ("Pl. Brief B Ex. H") at 23). Defendant Omid Rowshan, M.D., who treated the decedent at Lourdes, pronounced the decedent's death from cardiac respiratory failure at 6:35 p.m. (Pl. Compl. at ¶34).

On June 22, 2018, Plaintiff Shirley White, Executrix of the Estate of the decedent, filed a medical negligence action against Lourdes, Dr. Rowshan, and a number of other emergency medical services professionals, holding them professionally liable for failing to provide reasonable and adequate healthcare to the decedent. Plaintiff's complaint contains five counts: wrongful death (Count I), survival action (Count II), violation of 42 U.S.C. § 1983 (Count III), negligence (Count IV), and corporate negligence (Count V). In all counts except for Count V, Plaintiff asserts that Lourdes and Dr. Rowshan are vicariously liable for the actions of various unnamed Lourdes employees.

Defendants Lourdes and Dr. Rowshan filed their answer on July 27, 2018. Plaintiff timely submitted two AOMs: one by Dr. Tyrone J. Krause on July 3, 2018 (Doc. No. 3), and the other by Dr. Ronald A. Paynter on August 8, 2018 (Doc. No. 11). The AOMs, using exactly the same language, provide, in pertinent parts:

> In my professional opinion, there exists a reasonable probability that the care, skill, and or knowledge exercised and/or exhibited by Willingboro Township,

2

> Willingboro Township Emergency Services, Erik Anderson, Kirk Holmes, Virtua Emergency Medical Services, *Lourdes Medical Center-Burlington, and Omid Rowshan, M.D., jointly and/or severally by and through their actual and/or ostensible servants, agents and/or employees,* in the treatment, practice or work-related to Lee White, that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices and was a cause of harm to Lee White, deceased.

(Doc. 3 ("AOM by Dr. Tyrone J. Krause") at 2; Doc. 11 ("AOM by Dr. Ronald A. Paynter") at 2, (emphasis added)).

On August 8, 2019, Defendants filed a motion to dismiss on the grounds that (1) the AOMs do not support the vicarious liability asserted against Lourdes and Dr. Rowshan for the negligence of Lourdes Employees; and (2) no cognizable claim under 42 U.S.C. § 1983 can be asserted against Lourdes and Dr. Rowshan. (Doc. No. 25-1). The Court dismissed the motion for failure to comply with Local Civil Rule 56.1 on January 7, 2020. (Doc. No. 36).

On January 24, 2020, Defendants filed their motions for Partial Summary Judgment. They ask the Court to determine that: (1) the AOMs do not support the vicarious liability claims against Lourdes and Dr. Rowshan Plaintiff asserts in Counts I, II, and IV, and therefore these claims must be dismissed; (2) no cognizable claim under Section 1983 can be asserted against Lourdes and Dr. Rowshan; and (3) that damages against Lourdes must be capped at $250,000 pursuant to the New Jersey Charitable Immunity Act. (Doc. No. 37-3 ("Def. Brief A"); Doc. No. 38-2 ("Def. Brief B")).

## II.    LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' ") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. *Id.* at 331. Speculation, conclusory allegations, suspicions, or mere denials do not suffice to raise a genuine dispute of material fact. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288–289 (3d Cir. 2018).

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586. Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id.* at 255; *Matsushida*, 475 U.S. at 587.

**III.   DISCUSSION**

First, the Court examines whether the AOMs provided by Plaintiff are deficient. Next, the Court discusses whether Plaintiff has a cause of action under Section 1983 against Defendants Lourdes and Dr. Rowshan. Finally, the Court assesses whether Defendant Lourdes is entitled have its damages capped at $250,000 pursuant to N.J.S.A. 2A:53A–8.

### A. Affidavits of Merit

New Jersey's Affidavit of Merit statute provides in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide *each defendant* with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A–27(emphasis added).

The statute's "core purpose" is "to require plaintiffs to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of the litigation." *Paragon Contractors, Inc. v. Peachtree Condo. Ass'n*, 997 A.2d 982, 985 (N.J. 2010) (internal quotation omitted). Further, "there is no legislative interest in barring meritorious claims brought in good faith." *Id.* (internal quotation omitted). The statute applies in cases such as this one, where the "plaintiff's claim . . . of liability hinges upon allegations of deviation from professional standards of care by licensed individuals who worked for the named defendant." *McCormick v. State*, 144 A.3d 1260, 1267 (N.J. Super. Ct. App. Div. 2016).

"Absent a showing of one of four limited exceptions, the failure to file the affidavit 'shall be deemed a failure to state a cause of action.' " *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 290–91 (3d Cir. 2012) (quoting N.J.S.A.

5

2A:53A–29). The four limited exceptions are: "(1) where the defendant has failed to provide the plaintiff requested medical information; (2) a narrow class of cases where professional negligence can be demonstrated as a matter of 'common knowledge;' (3) where the plaintiff has substantially complied with the affidavit-of-merit requirement; or (4) where the plaintiff can show 'extraordinary circumstances' that warrant equitable relief." *Estate of Bowser v. Atl. Cty.*, No. 18-5606, 2019 WL 1277515, at \*6 (D.N.J. Mar. 20, 2019) (internal citations and quotations omitted).

Defendants argue that Plaintiff did not comply with the requirements of the AOM statute for her vicarious liability claims predicated on the negligence of Lourdes' employees and agents other than Dr. Rowshan. In response Plaintiff claims that she did meet the requirements of the AOM statute, and that even if she did not, at least one of the four exceptions described above applies.

### i.   Plaintiff Failed to Comply with the Requirements of the AOM Statute

Here, Defendants allege that Plaintiff failed to file an appropriate AOM pursuant to N.J.S.A. 2A:53A-27 because while Plaintiff alleges that Lourdes and Dr. Rowshan are vicariously liable for the actions of Lourdes Employees, her AOM did not specifically name these employees. (*See* Doc. 37-3 at 8–9). Courts have repeatedly held that a plaintiff's AOMs must specifically name the employees whose negligence underlies her vicarious liability claims. *See Estate of Bowser* 2019 WL 1277515, at \*6 (holding that plaintiff's AOMs were deficient because they did not allege any particularized acts of professional negligence or identify the negligent employees at issue); *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 3455478 (D.N.J. July 18, 2018) (holding that plaintiff's AOM was deficient where is only described negligence on the part of defendant's "employees, agents, and/or workman [sic]" without providing specific names); *Johnson v. Handler*, No. A-3862-13T3, 2015 WL 10677203, at \*6–7 (Super. Ct. App. Div. Apr.

6

15, 2016) (concluding that merely referring to a hospital's "physicians and other health care providers" in an AOM was insufficient to meet the requirements of the statute).

In this case, the two AOMs state that "there exists a reasonable probability that the care, skill, and or knowledge exercised and/or exhibited by . . . *Lourdes Medical Center-Burlington, and Omid Rowshan, M.D., jointly and/or severally by and through their actual and/or ostensible servants, agents and/or employees*, . . . fell outside acceptable professional or occupational standards or treatment practices and was a cause of harm to Lee White, deceased." (Doc. No. 3 at 2; Doc. No. 11 at 2 (emphasis added)). In light of the precedents cited above, it is clear that Plaintiff failed to adequately identify the unnamed Lourdes' employees in her AOMs, and thus failed to comply with the requirements of the AOM statute.

### ii. There Is No Substantial Compliance with the AOM Statute.

Although Plaintiff failed to fully comply with the AOM statute, she contends that her AOMs are in substantial compliance with the Rule because, (1) she sued not only the corporate entity of Lourdes but also its employees and agents, albeit unnamed; and (2) there is no prejudice to Defendants based upon the AOM in question. (Doc. No. 44 ("Pl. Brief B") at 12).

Substantial compliance requires establishing all of the following elements: "(1) lack of prejudice to the defending party; (2) a series of steps taken to comply with statute involved; (3) a general compliance with purpose of statute; (4) reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not a strict compliance with statute." *Levine v. Kindred Hospital New Jersey-Morris Cty.*, No. A-257-17T3, 2019 WL 1612998, at *6 (N.J. Super. Ct. App. Div. Apr. 15, 2019) (quoting *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779 (N.J. 2003)).

Here, Plaintiff's decision to sue various Lourdes' employees under fictitious names does not constitute any step toward compliance with the statute, as these names do not provide Lourdes

and Dr. Rowshan with any meaningful notice of whose actions they are allegedly vicariously liable for. Beyond suing these employees under fictitious names, Plaintiff has not taken any meaningful steps towards complying with the statute. As such, her argument for substantial compliance plainly fails.

### iii. Defendants' Failure to Provide Specific Names and to Object to the AOMs Does Not Excuse the AOMs' Deficiencies

Plaintiff argues that her failure to name specific Lourdes employees in her AOMs should be excused because Defendants failed to provide her the names of all of the Lourdes employees who treated the decedent, thus triggering the "denial of medical information" or the "extraordinary circumstances" exception. (*See* Doc. 44 at 12–13.) Assessing the validity of this argument requires some background on how medical malpractice proceed in New Jersey state court.

In an action of medical malpractice, New Jersey Rule of Court 4:5-3 requires that a physician defendant "who admits to treating the plaintiff must include in his or her answer the field of medicine in which he or she specialized at that time, if any, and whether his or her treatment of the plaintiff involved that specialty." N.J. Ct. R. 4:5-3. Moreover the New Jersey Appellate Division has held that a "public entity" defendant sued for medical malpractice on a theory of vicarious liability is "obligated to comply with Rule 4:5–3 by including in its answer the identities and specialties of the physicians, if any, involved in the defendant's care, and whether the treatment the defendant received involved those specialties." *McCormick v. State*, 144 A.3d at 1269.

Once the defendant files its answer, the plaintiff has sixty days to file an AOM in support of her claim. N.J.S.A. 2A:53A–27. Further, within ninety days of the filing of the answer, the trial court is supposed to hold a case management conference to remind the parties of the requirements of the AOM statute and to permit the defendants to raise any objections they have to the sufficiency

of the plaintiff's AOMS. *Buck v. Henry*, 25 A.3d 240, 250 (N.J. 2011). The plaintiff is also obliged to speak up at the conference if she believes she needs more information from the defendant to produce a satisfactory AOM. *McCormick*, 144 A.3d at 1269. These case management conferences are referred to as "*Ferreira* conferences," after the case that created the requirement.

"If the *Ferreira* conference fails to resolve a plaintiff's need for more information from defendant to procure an appropriate AOM, the plaintiff must comply with the statutory scheme by providing a 'sworn statement in lieu of the [AOM]' pursuant to N.J.S.A. 2A:53A–28, until the necessary disclosure occurs." *McCormick*, 144 A.3d at 1269. Under N.J.S.A. 2A:53A–28, the plaintiff's statement in lieu of an AOM should set forth that:

> [T]he defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.

Plaintiff argues that Defendants violated Rule 4:5–3 by failing to provide the specialties of Dr. Rowshan or any information on the identities of the other employees who treated Lee White in their answer. (Pl. Brief B at 12). Plaintiff further argues that if Defendants believed the AOMs to be deficient, they should have raised their concerns at a *Ferreira* conference, and that their failure to do so precludes the present motion. (*Id.* at 12–13).

There are several problems with Plaintiff's arguments. First, only "public entities" are obliged under Rule 4:5–3 to disclose the names of all physicians involved in a plaintiff's care in their answers, and Plaintiff makes no argument that Lourdes is a public entity under New Jersey law. Second, Rule 4:5–3 is a state court rule or procedure, and in most cases a federal court sitting in diversity must apply federal rules of procedure, not state rules. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). As the Federal Rules of Civil Procedure contain no analogous requirement,

9

it seems doubtful whether Lourdes was under any obligation to disclose the names of Lee White's treating physicians in its answer. And third, the Third Circuit has affirmatively held that the provision of a *Ferreira* conference is procedural, rather than substantive, state law, meaning that such conferences are not held in federal court. *See Nuveen*, 692 F.3d at 304–5. Consequently, Defendants can hardly be faulted for failing to raise objections at a conference that never took place.

Moreover, even if Defendants were under some obligation to disclose the names of the other physicians who treated Lee White, Plaintiff's deficient AOM would still not be excused. If the defendant fails to provide requested medical information, the Plaintiff's remedy is to file a sworn statement pursuant to N.J.S.A. 2A:53A–28. Plaintiff's failure to file any such statement means that her arguments regarding Defendants' non-compliance with their obligations under the statute must fail.

### iv. The Common Knowledge Exception Does Not Apply

Finally, Plaintiff alleges that because Defendants' negligence is arguably a matter of common knowledge rather than professional standards, an AOM is not necessary. (Pl. Brief B at 12–17.) The common knowledge exception applies where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts." *Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 499 (N.J. 2001) (internal quotation omitted). Courts construe this exception narrowly to avoid non-compliance with the AOM statute. *Id.* at 501.

The common knowledge doctrine typically only applies in cases involving a flagrant mistake by a medical professional. *See, e.g.*, *id.* at 500–01 (finding doctrine applied where dentist pulled the wrong tooth); *Sanzari v. Rosenfeld*, 167 A.2d 625 (N.J. 1961) (finding doctrine applied

10

patient died due to dentist's failure to ask patient about any history of hypertension); *Bender v. Walgreen Eastern Co., Inc.*, 945 A.2d 120 (N.J. Super. Ct. App. Div. 2008) (finding doctrine applied when a pharmacist incorrectly filled a prescription with a drug with a similar name to the one requested); *Mora v. U.S. Dep't of Homeland Sec. Immigration and Customs Enforcement*, No. 11-3321, 2013 WL 5180041, at *1, *7 (D.N.J. Sept. 13, 2013) (finding doctrine applied where individual in federal custody was never given any treatment after sustaining serious injuries during an assault); *Jackson v. Fauver*, 334 F. Supp. 2d 697 (D.N.J. 2004) (finding doctrine applied where personnel failed to follow instructions of inmate's treating specialists).

No such flagrant mistake is alleged in this case. Rather, Plaintiff asserts that Lourdes' staff was negligent by delaying treatment for Lee White by 4-5 minutes. (Pl. Brief B at 15). Without expert testimony, it is doubtful that lay jurors can determine what effect such a delay has on a person suffering from a heart attack, and Plaintiff has cited no caselaw suggesting otherwise. Accordingly, the common knowledge exception does not apply here. And as Plaintiff's AOMs are deficient and no exception applies, summary judgment must be granted on her vicarious liability claims.

### B.   42 U.S.C. § 1983

Section 1983 "provides a remedy for the violation of rights created by federal law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). To make out a Section 1983 claim, "a plaintiff must demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Id*. The standard for satisfying the "under color of law" requirement in Section 1983 cases is effectively the same as for demonstrating state action under the Fourteenth Amendment. *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169 n.1 (3d Cir. 2004) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838

(1982)). The plaintiff bears the burden of proof to establish that the Defendant was acting under color of law. *Groman*, 47 F.3d at 638.

If the defendant is an ostensibly private entity, the plaintiff must show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Id.*

Here, Defendants argue that no cognizable claim under 42 U.S.C. § 1983 can be asserted against Lourdes and Dr. Rowshan because they are private actors, and therefore are not amenable to suit under Section 1983. (Def. Brief A at 11–12.) Plaintiff's argument is that Lourdes is a state actor because it receives public funds, including Medicare and Medicaid funds, and is subject to state and federal regulation, and that whether Dr. Rowshan is a state actor depends on whether he was involved with state action as an agent of Lourdes. (*See* Pl. Brief B at 19.)

Plaintiff is simply wrong. Private hospitals are not transformed into state actors merely because they received federal and state funding and are subject to accompanying regulations. *See Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 293 (3d Cir. 2010) (noting that "[t]his argument has been considered and repeatedly rejected by the Supreme Court in similar cases (citing *Blum v. Yaretsky*, 457 U.S. 991, 1010–11 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982); *Hodge v. Paoli Memorial Hospital*, 576 F.2d 563 (3d Cir. 1978)). Plaintiff has failed to establish the necessary "close nexus" between the State and Lourdes' actions to show that Lourdes and Dr. Rowshan are state actors, meaning that summary judgment must be granted on her Section 1983 claim.

### B. Lourdes is Entitled to the Protection of N.J.S.A. 2A:53A–8

The New Jersey Charitable Immunity Act protects charitable, religious, and hospital organizations from negligence liability. Section 2A:53A-7(a) completely immunizes entities "organized exclusively for religious, charitable or educational purposes" from negligence actions brought by "beneficiaries" of those entities' activities, while Section 2A:53A-7(b) immunizes nonprofit hospitals in particular from any such negligence action. Section 2A:53A-8, however, provides that "notwithstanding" the blanket immunity of § 2A:53A-7, any "nonprofit corporation, society or association organized exclusively for hospital purposes" shall be liable in a negligence action for no more than $250,000, inclusive of interest and costs. Thus, as the Supreme Court of New Jersey has explained,

> By the plain language of N.J.S.A. 2A:53A-7 and -8, a hospital is subject to limited liability under section 8 if it is formed as a nonprofit corporation, society, or association, is organized exclusively for hospital purposes, was promoting those objectives and purposes at the time the plaintiff was injured, and the plaintiff was a beneficiary of the activities of the hospital.

*Kuchera v. Jersey Shore Family Health Ctr.*, 111 A.3d 84, 90 (N.J. 2015). Further, as remedial legislation, the Charitable Immunity act is construed liberally. *Id.* (citing N.J.S.A. 2A:53A–10).

Defendants assert that Lourdes is entitled to the immunity of N.J.S.A. 2A:53A–8 and the $250,000 cap on damages because it is a nonprofit corporation organized for hospital and charitable purposes. (Def. Brief B at 6–7). Plaintiff disputes Lourdes' entitlement to limited liability under N.J.S.A. 2A:53A–8 on the grounds that Lourdes is not actually a "nonprofit" corporation and because Lourdes was grossly negligent in its provision of care to Lee White.

Plaintiff's first argument is without merit. According to the Division of Health of New Jersey, Lourdes is licensed as a general acute care hospital. (Doc. 38-5 ("Def. Brief B Ex. D") at 2.) And according to Lourdes' Certificate of Incorporation, it is a corporation organized and

operated exclusively for charitable, religious, educational and scientific purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. (Doc. 38-5 ("Def. Brief B Ex. C") at 2.) The Form 990 provided by Plaintiff also shows that Lourdes is organized as a nonprofit organization within the meaning of Section 501(c)(3) of the Internal Revenue Code. (*See* Doc. 45-2 ("Pl. Brief C Ex. B") at 3.) While Plaintiff has produced evidence that Lourdes is part of a larger health system that generates a large amount of *revenue*, she fails to provide any evidence that Lourdes exists to earn a *profit*. (Doc. No. 43-2 at 3–4). Therefore, Lourdes is a nonprofit corporation organized for hospital purposes within the meaning of N.J.S.A. 2A:53A-8.[1]

By contrast, Plaintiff's second argument has some merit. The Charitable Immunity Act, as a whole, does not immunize nonprofit entities for intentional, reckless or grossly negligent conduct, meaning that neither Section 7 nor Section 8 applies to gross negligence. *See Ptaszynski v. Atl. Health Sys., Inc.*, 111 A.3d 111, 121 (N.J. Super. Ct. App. Div. 2015). Consequently, if Plaintiff is able to establish at trial that Lourdes' was grossly negligent (was acting with a higher level of culpability), the Act will not apply. However, if Plaintiff is only able to establish mere negligence, Lourdes will be shielded by the Act's damages cap.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' first Motion for Summary Judgment (Doc. No. 37) and **GRANTS IN PART** and **DENIES IN PART** Defendants' second Motion for Summary Judgment (Doc. No. 38). Plaintiff's vicarious liability claims against Lourdes and Dr. Rowshan based on the acts of Lourdes' employees other than Dr. Rowshan are **DISMISSED WITH PREJUDICE** for failure to file a sufficient AOM; Plaintiff's Section 1983

---

[1] Plaintiff appears to principally rely on case law discussing whether a corporation is organized for charitable purposes under N.J.S.A. 2A:53A–7(a). Because defendant only seeks to invoke the protection of N.J.S.A. 2A:53A–8, such case law is inapposite.

14

claims against Lourdes and Dr. Rowshan are **DISMISSED WITH PREJUDICE**; and Lourdes is entitled to a cap on damages under the New Jersey Charitable Immunity Act if Plaintiff is only able to establish negligence. An Order follows.


Dated: July 2, 2020 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge